IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ABIODUN O., | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| vs. | : | NO.   25-cv-3585 |
| | : | |
| FRANK BISIGNANO, | : | |
| Commissioner of Social Security, | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

**LYNNE A. SITARSKI**
**UNITED STATES MAGISTRATE JUDGE**                                               January 14, 2026

Plaintiff Abiodun O. brought this action seeking review of the Commissioner of Social Security Administration's decision denying his claim for Social Security Disability Insurance (SSDI) and Supplemental Security Income (SSI) benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f.  This matter is before me for disposition upon consent of the parties.  For the reasons set forth below, Plaintiff's Request for Review (ECF No. 10) is **DENIED**.

### I.    PROCEDURAL HISTORY

Plaintiff initially protectively filed for SSDI and SSI on December 7, 2022, alleging disability since August 1, 2019, due to type 2 diabetes, hepatitis C, high blood pressure and high cholesterol.  (R. 58).  Plaintiff's applications were denied at the initial level and upon reconsideration, and Plaintiff requested a hearing before an ALJ.  (R. 63, 69, 76, 83, 108-09).  Plaintiff, represented by counsel, and a vocational expert (VE) testified at the May 13, 2024 administrative hearing.  (R. 35-57).  On June 28, 2024, the ALJ issued a decision unfavorable to

Plaintiff. (R. 15-34). Plaintiff requested review by the Appeals Council, which was denied on May 14, 2025, thus making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. (R. 1-6).

On July 13, 2025, Plaintiff filed a complaint in this Court and consented to my jurisdiction pursuant to 28 U.S.C. § 636(C) eight days later. (Compl., ECF No. 1; Consent Order, ECF No. 4). On October 20, 2025, Plaintiff filed a Brief and Statement of Issues in Support of Request for Review. (Pl.'s Br., ECF No. 10). The Commissioner filed a Response on November 18, 2025, and on December 2, 2025, Plaintiff filed a Reply. (Resp., ECF No. 11; Reply, ECF No. 12).

## II.  FACTUAL BACKGROUND

The Court has considered the administrative record in its entirety and summarizes here the evidence relevant to the instant request for review.[1]

Plaintiff was born on December 28, 1980, and was 38 years old on the alleged disability onset date. (R. 255). He completed two years of college. (R. 260). His past relevant work includes taxi and medical transport driver and Amazon warehouse employee. (R. 43-44, 260).

### A.  Medical Evidence

At a November 11, 2019 visit at Einstein Healthcare Network (Einstein) in Philadelphia, it was noted that Plaintiff was "doing well" but that he should exercise to lose weight. (R. 637). One week later he visited his primary care physician, Mary Eschelman, M.D., and again was noted to be "doing well" with "no complaints." (R. 593). He had a "normal exam." (R. 594).

---

[1] Because Plaintiff's claim revolves around his abilities to move and stand, the Court addresses only the evidence implicating that functionality.

Plaintiff's overall status remained unchanged at an October 18, 2020 visit with Dr. Eschelman at City of Philadelphia Public Health. (R. 584). On April 21, 2021, he expressed "no physical concerns" to her. (R. 571). On October 14, 2021, she directed him to exercise for 30 to 40 minutes at least four times weekly. (R. 569). Dr. Eschelman noted "5/5 muscle strength . . . to all major muscle groups of the bilateral lower extremity" following a March 8, 2022 examination. (R. 566). He was again directed to engage in cardiovascular exercise for 30 minutes daily approximately five times per week. (*Id.*). Plaintiff returned to Dr. Eschelman six months later and reported "no concerns" following a trip to Africa. (R. 562). On February 2, 2023, he reported "feeling well today" during a visit to Einstein. (R. 624). The following month he similarly indicated "no physical concerns" to Dr. Eschelman. (R. 556).

On March 7, 2023, consultative examiner Monique Slade, N.P., conducted an Internal Medicine Examination of Plaintiff. (R. 413-32). She noted that his chief complaint was diabetes causing fatigue (and dizziness during periods of low blood sugar) but that he also had high blood pressure and cholesterol and was morbidly obese. (R. 413-14). His activities of daily living (ADLs) included driving, cleaning and doing laundry twice weekly, shopping weekly, showering and dressing most days, and socializing with friends. (R. 414). He reported requiring no assistance at home. (*Id.*). During the examination, he exhibited normal gait with the ability to walk on heels and toes and squat fully, with no use of an assistive device, and he was able to rise from a chair and get on and off the examination table without help. (R. 415). His musculoskeletal review was normal with full strength in his upper and lower extremities. (R. 416). Slade graded his prognosis as fair. (R. 417).

In the attached Medical Source Statement of Ability to Do Work-Related Activities (Physical), she indicated that Plaintiff could continuously lift and carry up to 100 pounds; sit,

stand and walk (each) for one hour at a time without interruption and for eight hours in a workday; ambulate without a cane; and engage in all postural maneuvers and activities listed on the form. (R. 418-21). Slade left blank the portions of the form asking her to support these assessments. (R. 419-21). Lastly, she recorded that Plaintiff's range of motion in all examined joints was within normal limits. (R. 425-28).

On March 22, 2023, State agency medical consultant Minda Uy-Barreta Bermudez, M.D., determined that Plaintiff does not have a combination of impairments that is severe and that his statements about the intensity, persistence and functionally limiting effects of his symptoms were not substantiated by the medical records themselves. (R. 66-68). Upon reconsideration on July 28, 2023, State agency medical consultant Gerald Joseph Levanoski, M.D., endorsed these findings. (R. 72).

On April 1, 2024, Plaintiff completed a Patient Intake form with Atlantic Pain and Wellness Institute in which he indicated that for the last zero to three months he has had constant, sharp, moderate pain in his lower back and buttocks upon movement/bending forward and sitting (but not walking or standing) that interferes with unspecified "daily living activities." (R. 724).

On April 15, 2024, Dr. Eschelman issued a to-whom-it-may-concern letter stating that Plaintiff "reports body pain, back pain and knee pain with prolonged driving or standing" and that "[h]e says he is having difficulty working" because of this pain. (R. 729).

On April 29, 2024. Dr. Eschelman completed a Primary Source Statement in which she opined that Plaintiff had a stable prognosis despite his fatigue and knee, back, and shoulder pain and the fact that his pain is "exacerbated by activity [and] prolonged standing." (R. 709).

4

However, she crossed out and indicated that she was "unable to complete"[2] the remainder of the form, which included the portions directing her to quantify how far Plaintiff could walk and how long he could sit, stand, and walk at one time and in an eight-hour workday and, further, assess his need to use an assistive device, shift positions, take unscheduled breaks, and elevate his legs. (R. 711-13).

    **B.**    **Non-Medical Evidence**

Plaintiff testified at the May 13, 2024, administrative hearing that he lives alone, although his mother sometimes stays with him. (R. 41). He stated that he has a driver's license but can only drive three to five miles due to pain in knees and around his stomach and neck. (R. 42). He worked as a driver for approximately 30 hours per week until six months prior to the hearing but stopped due to a "raw" throat and other unspecified pain, for which he was recommended medical marijuana.[3] (R. 44-45). When asked by the ALJ to explain why he believed he was disabled, he cited "my condition and everything," "Charley horse[s]," side effects from medication (particularly fatigue), and Covid-related masking requirements affecting his breathing. (R. 46). He claimed that he could not perform a sit-down job due to "deep" but unspecified pain. (R. 47). When questioned by his attorney, Plaintiff testified that he could sit between 30 and 60 minutes, stand between 10 and 15 minutes, rise from a seated position or bed (unless he had a Charley horse in the night), sit at a computer and type "[b]ut not for a very long time," walk a half a mile "without any trouble," bend down to the floor, kneel "a little bit," and

---

    [2] Dr. Eschelman explained in an addendum to the form that these portions asked questions "beyond the scope of [her] practice." (R. 722).

    [3] At the time of the hearing, Plaintiff had not yet obtained the medical marijuana and was "still going through the pain," although he added, "so far so good." (R. 51). He stated that he had been treating with pain management for approximately three months. (*Id.*).

5

lift five pounds but not climb stairs, stoop, or squat. (R. 48-49). He further indicated that he could shop for groceries, prepare limited meals on disposable plates, vacuum and clean for 10 to 15 minutes, travel to appointments, and generally engage in personal care. (R. 50-51).

Plaintiff completed an adult function report on February 1, 2023. (R. 265-74). He indicated therein that he suffers from constant fatigue, excessive bathroom visits, and "body pains and fever from time to time." (R. 265). He described his daily routine as praying, going to work if he is not sick, relaxing in the evening, cleaning, taking his medications, and praying again before bed. (R. 266). He added that he also helps his mother with groceries, shops, attends church, goes to the library, does laundry, sweeps, walks, drive and rides in a car, uses public transportation and goes outside "quite often." (R. 266-69). Moreover, he checked boxes on the form reflecting that he has difficulties with lifting, squatting, bending and climbing stairs but not with standing, walking,[4] sitting, or kneeling. (R. 270). He stated that in the past he had more energy and was also capable of working overtime, but since the onset of his conditions he has had "some reduction" in his activities due to "pains and fatigue." (R. 266, 269).

### III.   LEGAL STANDARD

To be eligible for benefits under the Social Security Act, a claimant must demonstrate to the Commissioner that he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. §

---

[4] Despite also noting earlier in the form that he walks "regularly" as a "hobby" or "interest," (R. 268), he later claimed that he can only do so continuously for one-quarter of a mile before having to rest for up to 30 minutes and that he requires a walker and cane to ambulate. (R. 268, 270-71).

1382c(a)(3)(A).  A five-step sequential analysis is used to evaluate a disability claim:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, then the Commissioner considers in the second step whether the claimant has a "severe impairment" that significantly limits his physical or mental ability to perform basic work activities.  If the claimant suffers a severe impairment, the third inquiry is whether, based on the medical evidence, the impairment meets the criteria of the impairment listed in the "listing of impairments," . . . which result in a presumption of disability, or whether the claimant retains the capacity to work.  If the impairment does not meet the criteria for a listed impairment, then the Commissioner assesses in the fourth step whether, despite the severe impairment, the claimant has the residual functional capacity to perform his past work.  If the claimant cannot perform his past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.

*Sykes v. Apfel*, 228 F.3d 259, 262-63 (3d Cir. 2000); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The disability claimant bears the burden of establishing steps one through four.  If the claimant is determined to be unable to resume previous employment, the burden shifts to the Commissioner at step five to establish that, given the claimant's age, education, work experience, and mental and physical limitations, he is able to perform substantial gainful activities in jobs existing in the national economy.  *Poulos v. Comm'r. of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007).

Judicial review of a final decision of the Commissioner is limited.  A district court is bound by the factual findings of the Commissioner if they are supported by substantial evidence and decided according to correct legal standards.  *See, e.g., Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  Substantial evidence is "more than a mere scintilla," and "such relevant evidence as a reasonable mind might accept as adequate."  *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 118 (3d Cir. 2000) (citations omitted).  Even if the record could support a contrary conclusion, the decision of the ALJ will not be overruled as long as there is substantial evidence to support it.

*See, e.g.*, *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986). The Court exercises plenary review over legal issues. *See, e.g.*, *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999).

IV. **ALJ'S DECISION**

   The ALJ issued a decision in which she made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2026.

2. The claimant has not engaged in substantial gainful activity since the August 19, 2019, the [sic] alleged onset date (20 CFR 404.1520(b), 20 CFR 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. The claimant has the following severe impairments: hepatic steatosis; hepatitis B; obesity; and diabetes (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can tolerate occasional concentrated exposure to extreme cold, extreme heat, fumes, odors, dust, gases, and poor ventilation.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on December 28, 1980 and was 38 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has

> transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 1, 2019, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(R. 18-29). Accordingly, the ALJ found that Plaintiff was not disabled. (R. 29).

## V. DISCUSSION

Plaintiff presents a single claim in his request for review: "The ALJ failed to properly support the RFC that Plaintiff could perform a range of light work despite his severe impairments, warranting remand." (Pl.'s Br, ECF. No. 10, at 4 (capitalization omitted)). For the following reasons, I reject this claim and deny the request for review.

### A. The Parties' Arguments

After setting forth the applicable background law, Plaintiff posits that the ALJ did not explain how he could perform light work notwithstanding substantial evidence that his pain was worsened by activity and prolonged standing. (*Id.* at 4-5). He claims that the ALJ failed to consider the consistency between, and "essentially reject[ed]," Slade's opinion that he could only stand for one hour at a time and Dr. Eshelman's that prolonged standing caused pain. (*Id.* at 5 (citing 20 C.F.R. § 404.1520c(c)(2) for the proposition that the ALJ must consider consistency because consistent opinions are "more persuasive")). Additionally, he argues that despite generally discounting his testimony as "not entirely consistent" with the record the ALJ failed to specifically evaluate his contention that he could only stand for 10 to 15 minutes, rendering it

9

impossible to determine if it was rejected or disregarded. (*Id.* at 5-6 (citing *Ginder v. Comm'r of Soc. Sec.*, No. 24-2098, 2025 WL 323095, at *2 (3d Cir. Jan. 29, 2025))). Plaintiff complains that these errors were harmful because light work requires standing or walking for the majority of an eight-hour workday. (*Id.* at 6 (citing *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 120-21 (3d Cir. 1995); *Ginder*, 2025 WL 323095, at *2)). He acknowledges that here the VE confirmed that an individual who could only sit, stand or walk for one hour at a time could nonetheless perform the three jobs identified, but he insists that the ALJ should have "explored if a more frequent sit/stand option would affect those jobs" because, if credited, Plaintiff's testimony that he must change positions four times hourly would mean that work at any exertional level could potentially be disrupted. (*Id.*). He concludes that in light of the medical opinions and hearing testimony regarding his difficulty with prolonged standing the ALJ should have explained how she accommodated this limitation in his RFC or otherwise have specifically elaborated upon why she rejected this evidence. (*Id.* at 6-7).

After summarizing the applicable law and the ALJ's decision, the Commissioner counters that her determination that Plaintiff can perform light work does not actually conflict with a finding that he could not stand for "prolonged" periods. (Resp., ECF No. 11, at 6 (citing 20 C.F.R. §§ 404.1567(b), 416.967(b))). Instead, the Commissioner asserts that the ALJ properly considered Slade's and Dr. Eschelman's opinions, including the former's determination that Plaintiff could only sit, stand, and walk uninterrupted for one hour each in an eight-hour workday, but the ALJ concluded that it was not explained by Slade or well supported by her other findings, even if the otherwise persuasive opinion was consistent with the record evidence and supported by her examination of Plaintiff showing ambulation without an assistive device, normal gait, full motor strength in all extremities, intact hand and finger dexterity, and full grip

strength bilaterally. (*Id.* at 6-7 (citing R. 26, 415-16, 418-19)). The Commissioner adds that the ALJ accounted for Plaintiff's established severe impairments of hepatic steatosis, hepatitis B, obesity and diabetes, as well as his claims of fatigue, when she limited him to only light work. (*Id.* at 7 (citing R. 23, 26, 418)).

The Commissioner continues that insofar as Plaintiff contends that the ALJ should have specifically addressed the "standing" limitation in Slade's opinion, under applicable case law an ALJ need not "explicitly reject any part of a persuasive . . . opinion that does not make it into the RFC." (*Id.* (quoting *Benson v. Kijakazi*, No. 21-cv-1345, 2022 WL 17406051, at *1 n.1 (W.D. Pa. Dec. 2, 2022); citing *Wilkinson v. Comm'r of Soc. Sec.*, 558 F. App'x 254, 256 (3d Cir. 2014)) (additional citations omitted)). Turning to Dr. Eschelman's opinion, the Commissioner highlights that the ALJ acknowledged the doctor's finding that activity and prolonged standing exacerbated Plaintiff's pain but correctly observed that the opinion was vague and failed to set forth any specific restrictions in functioning. (*Id.* at 8 (citing R. 26, 710; 20 C.F.R. § 404.1513(a)(2), 416.913(a)(2))). In fact, notes the Commissioner, Dr. Eschelman crossed out the portion of the opinion that directed her to set forth and support any purported limitations, such as the one Plaintiff now claims regarding his ability to stand without interruption. (*Id.* (citing R. 711-16)). Accordingly, the Commissioner maintains that the ALJ's decision, read in its entirety, adequately explains her determination that these two medical opinions were not fully persuasive because they were not consistent with or supported by the evidence. (*Id.* (citing 20 C.F.R. §§ 404.1520c, 416.920c; *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004))).

Lastly, the Commissioner argues that the ALJ considered Plaintiff's subjective claim that he could only stand for up to 15 minutes at a time but, in a thorough discussion spanning multiple pages, properly determined that it did not comport with the evidence as a whole,

including medical records reflecting a lack of complaints to medical providers, the ability to travel to and from Africa, no need for assistance at home, a directive to perform 30 minutes of cardiovascular activity five days per week, and normal physical examination results showing regular gait, no use of assistance devices, full strength throughout his extremities, and the ability to walk on heels and toes, squat fully, rise from a chair, and get on and off the examination table. (*Id.* at 8-10 (citing R. 24-29, 414-16, 549-50, 556, 562, 565-66, 571, 584, 593)).  The Commissioner further emphasizes that notwithstanding Plaintiff's hearing testimony he previously asserted no issues with standing in his February 2023 Adult Function Report. (*Id.* at 10 (citing R. 271)).  For these reasons, the Commissioner maintains that Plaintiff's reliance on his subjective complaints regarding standing for more than 15 minutes is likewise misplaced. (*Id.*).

In a short reply, Plaintiff dismisses the Commissioner's arguments as "broad" and "unacceptable post hoc rationalizations of the ALJ's errors" and insists that "these tactics" do not offset the "specific errors committed by the ALJ in the first instance." (Reply, ECF No. 12, at 1).  Otherwise, he relies on his opening brief. (*Id.*).

**B.     Analysis**

The ALJ is responsible for fashioning a claimant's RFC.  A claimant's RFC is what he can still do despite his established impairments.  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  In making an RFC determination, the ALJ must consider all evidence before him. *See Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999).  That evidence includes medical records, observations made during formal medical examinations, descriptions of limitations by the claimant and others, and observations of the claimant's limitations by others.  *See Fargnoli v. Massanari*, 247 F.3d 34, 41 (3d Cir. 2001); 20 C.F.R. §§ 404.1545(a), 416.945(a).

1.  **The Medical Opinion Evidence**

An ALJ must consider the medical opinions together with the rest of the relevant evidence, and explain the weight given to those opinions in his decision. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 362 (3d Cir. 2006). While there is an undeniable medical aspect to the evaluation of medical opinions, it is well settled that "[t]he ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." *Id.* at 361. When confronted with several medical opinions, the ALJ can choose to credit certain opinions over others but "cannot reject evidence for no reason or for the wrong reason." *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993) (quoting *Cotter v. Harris*, 642 F.2d 700, 707 (3d Cir. 1981)). Further, the ALJ can credit parts of an opinion without giving credit to the whole opinion and may formulate a claimant's RFC based on different parts of different medical opinions, so long as the rationale behind the decision is adequately articulated. *See, e.g.*, *Byrd v. Comm'r of Soc. Sec.*, No. 23-4957, 2024 WL 4631645, at *9 (E.D. Pa. Oct. 30, 2024); *Durden v. Colvin*, 191 F. Supp. 3d 429, 455 (M.D. Pa. 2016).

The social security regulations "require, an ALJ to offer 'a narrative discussion describing how the evidence supports'" the limitations imposed. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 209 (3d Cir. 2019) (citing SSR 96-8P, at *7). An "ALJ 'may not reject [a physician's findings] unless he first weighs them against other relevant evidence and explains why certain evidence has been accepted and why other evidence has been rejected.'" *Mason*, 994 F.2d at 1067 (quoting *Kent v. Schweiker*, 710 F.2d 110, 115 n.5 (3d Cir. 1983)); *see also Carter v. Railroad Retirement Bd.*, 834 F.2d 62, 65 (3d Cir. 1986).

When evaluating medical evidence, the most important factors are supportability and consistency, and the ALJ must explain how he or she considered these factors for a medical

13

source's medical opinions or prior administrative medical findings in the determination or decision. 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c). Although the ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett*, 220 F.3d at 119).

Here, Plaintiff complains that in rejecting Slade's and Dr. Eschelman's opinions the ALJ failed to consider their consistency with each other, (Pl.'s Br, ECF. No. 10, at 5), but this contention is unavailing for multiple reasons. First, the ALJ in fact found Slade's opinion "persuasive" overall except as to the sit/stand/walk limitation (and another limitation not at issue here). (R. 26). Insofar as Plaintiff suggests that she should have accepted this limitation along with the rest of the opinion, an "ALJ [i]s not required to adopt all of [an] opinion solely because she found the opinion as a whole persuasive . . . ." *Wilkinson*, 558 F. App'x at 256 (citing *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986)). Moreover, the ALJ explained that this specific limitation was "not persuasive because it is not well supported by the examiner's own limited findings or an explanation for why the claimant would be so limited in these areas." (R. 26). Upon close review of Plaintiff's brief, he does not argue otherwise.

Second, Plaintiff identifies no authority for the notion that an ALJ must specifically consider each medical opinion's consistency with every other in the record. His cited regulation, 20 C.F.R. § 404.1520c(c)(2), provides only that the ALJ must evaluate an opinion's consistency generally with the other "evidence" in the record, including from medical sources as well as non-medical ones. *See* 20 C.F.R. § 404.1520c(c)(2); *see also id.* § 416.620c(c)(2) (same). Additionally, it is well-established that the ALJ need not discuss "every tidbit of evidence

14

included in the record." *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004).

Third, although the ALJ did not explicitly consider the consistency between the two opinions, she evaluated Slade's opinion's consistency with the record as a whole (which included Dr. Eschelman's opinion) but clearly did not judge the latter opinion a sufficient basis to accept Slade's sit/stand/walk restriction given the identified lack of support and explanation for it. (R. 26). As for the ALJ's discussion of Dr. Eschelman's opinion, it is true that it lacks any reference to consistency, (*see id.*), but this omission constitutes, at most, harmless error because the doctor recorded that she was "unable to complete" the portion of the form directing her to assess how long Plaintiff could sit, stand, and walk at one time and in an eight-hour workday, as well as related abilities regarding how far Plaintiff could walk and his need to use an assistive device, shift positions, take unscheduled breaks, and elevate his legs. (R. 711-12); *see also Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005) (harmless error not affecting the outcome of the case fails to merit remand). Instead, Dr. Eschelman only offered that Plaintiff's "pain [is] exacerbated by activity [and] prolonged standing," (R. 710), but "it is well settled that a claimant need not be pain-free or experiencing no discomfort in order to be found not disabled." *Andreolli v. Comm'r of Soc. Sec.*, No. 07-1632, 2008 WL 5210682, at *4 (W.D. Pa. Dec. 11, 2008) (citing *Welch v. Heckler*, 808 F.2d 264, 270 (3d Cir. 1986)). In other words, even if the ALJ had articulated her view of this opinion's consistency, it remained "vague and . . . did not provide any specific functional limitations" for the ALJ to credit or reject in formulating Plaintiff's RFC. (R. 26); *see* 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2) (a "medical opinion" must describe "what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions").

Thus, the ALJ did not err in her evaluation of the medical evidence. Plaintiff's

15

contentions on this point instead amount to a mere disagreement with the ALJ regarding how much weight to assign the varying pieces of evidence in the record. *See Perkins v. Barnhart*, 79 F. App'x 512, 514-15 (3d Cir. 2003) ("[The claimant's] argument here amounts to no more than a disagreement with the ALJ's decision, which is soundly supported by substantial evidence."); *Markoch v. Comm'r of Soc. Sec.*, No. 1:20-CV-00417, 2020 WL 7586953, at *4-5 (D.N.J. Dec. 22, 2020) ("It is Plaintiff's burden to establish the severity of her impairments, and Plaintiff's challenge to the ALJ's consideration of her non-severe impairments amounts to mere disagreement with his analysis rather than showing any substantive error."); *see also Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006) ("Surveying the medical evidence to craft an RFC is part of the ALJ's duties."). However, this disagreement does not warrant remand.

### 2. Plaintiff's Subjective Complaints

Under Social Security Ruling 16-3p, the ALJ must follow a two-step process in evaluating the plaintiff's subjective symptoms: (1) determine if there is an underlying medically determinable physical or mental impairment, shown by medically acceptable clinical and laboratory diagnostic techniques, that could reasonably be expected to produce the plaintiff's pain or symptoms; then (2) evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the plaintiff's functioning. SSR 16-3p, 2017 WL 5180304, at *3-8 (Oct. 25, 2017). In evaluating the intensity, persistence, and limiting effects of a claimant's symptoms, the ALJ must consider relevant factors such as the objective medical evidence, evidence from medical sources, treatment course and effectiveness, daily activities, and consistency of the plaintiff's statements with the other evidence of record. *Id.*

An ALJ is required to "give serious consideration to a claimant's subjective complaints of pain [or other symptoms], even where those complaints are not supported by objective

evidence." *Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir. 1993) (citing *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985)).  Where complaints are "supported by competent medical evidence," the ALJ is required to give them "great weight . . . ." *Schaudeck*, 181 F.3d at 433. However, if the complaints "are not fully credible," the ALJ "has the right, as the fact finder, to reject partially, or even entirely, such subjective complaints . . . ." *Weber v. Massanari*, 156 F. Supp. 2d 475, 485 (E.D. Pa. 2001).

Here, Plaintiff points to his claims at the hearing that he can only stand for up to 15 minutes continuously and observes that "**[t]he ALJ failed to evaluate this testimony specifically**," (Pl.'s Br, ECF. No. 10, at 5 (emphasis in original)), but the ALJ is under no duty to discuss every piece of evidence in the record, including each bit of a claimant's testimony. *Hur*, 94 F. App'x at 133.  Instead, the decision need only permit the reviewing court "'to trace the path of an adjudicator's reasoning.'" *Lawrence v. Kijakazi*, No. 22-cv-4995, 2023 WL 7129950, at *10 (E.D. Pa. Oct. 30, 2023) (quoting 82 Fed. Reg. 5844-01, at 5858); *see also Robert I. v. O'Malley*, No. 1:22-cv-1892, 2024 WL 3102224, at *14 (D.N.J. June 24, 2024) (the "ALJ's discussion must provide for 'meaningful review' when read as a whole") (internal quotation omitted).  The ALJ fulfilled this obligation here when, in determining that Plaintiff's statements regarding the intensity, persistence and limiting effects of his symptoms were not fully consistent with the remaining evidence, she highlighted his normal physical examination results, including full strength in all extremities, no need for an assistive device, normal gait, and ability to squat fully, walk on heels and toes, and maneuver himself throughout the examination (R. 24-25 (citing Exs. 3F, 5F)); lack of complaints to medical providers and, at times, affirmative representations that he was "doing well" (R. 25 (citing Ex. 5F)); ability to travel back and forth between the United States and Africa (*id.* (citing Ex. 5F)); repeated directives from providers to

17

limit his sedentary lifestyle and engage in cardiovascular exercise (*id.* (citing Ex. 5F)); his lack of need for any help at home (*id.* (citing Ex. 3F)); and his ADLs consisting of driving, cleaning, doing laundry, shopping, personal care, reading and socializing with friends. (*Id.* (citing Ex. 3F)). Accordingly, no relief is due on Plaintiff's claim that the ALJ failed to properly consider his testimony that he can only stand for up to 15 minutes.[5]

## VI.   CONCLUSION

For the reasons set forth above, Plaintiff's Request for Review is **DENIED**. An appropriate Order follows.

BY THE COURT:

  /s/ Lynne A. Sitarski
LYNNE A. SITARSKI
United States Magistrate Judge

---

[5] Relatedly, Plaintiff argues that the ALJ should have "explored" with the VE whether his supposed need to switch between sitting and standing more frequently than hourly would affect his ability to do the three jobs the VE identified for him because, if credited, his testimony that he had to change positions every 15 minutes would have been inconsistent with any exertional level. (Pl.'s Br., ECF No. 10, at 6). However, as set forth above, the ALJ adequately articulated her reasons for refusing to credit this testimony, and thus no further exploration of his ability to perform these jobs with a more frequent sit/stand option was required.